UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| CHRISTIN ISAIAH BARNES, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| vs. | ) | Case No. 1:18CV00251 SNLJ |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on a motion under 28 U.S.C. § 2255 to vacate, set aside or correct sentence by Christin Isaiah Barnes, a person in federal custody. On May 17, 2017, Barnes plead guilty before this Court to the offense of conspiracy to distribute methamphetamine and distribution of methamphetamine. On August 23, 2017, this Court sentenced Barnes to the Bureau of Prisons for a term of 120 months. Barnes' § 2255 motion, which is based on several allegations of ineffective assistance of counsel, is fully briefed and ripe for disposition.

### I.   PROCEDURAL HISTORY

In July of 2015, DEA Agents began an investigation into the drug trafficking activities of a Stanley William Gunter. (PSR ¶ 12)2 As the investigation progressed Agents used an undercover officer to purchase methamphetamine from Gunter in September, October and December of 2015. Id. In January of 2016, Barnes, Gunter and

co-conspirator Rosa Guzman met at a drug "stash house" in Jackson Missouri. (PSR ¶ 13)

On February 5, 2016, Barnes directed Gunter to provide Guzman with two ounces of Methamphetamine, which Guzman was to deliver to an unidentified female subject. (PSR ¶ 14) Gunter told Barnes that he would send money back with Guzman as well. Id.

On February 8, 2016, Guzman was stopped by police in St. Charles County Missouri, for following too closely. (PSR ¶ 16) A search of Guzman's black Mercedes was conducted after a police drug detecting canine alerted to the vehicle. Id. $6,180.00 United States currency was seized from Guzman's purse after the dog alerted as well. Id. Guzman told officers that she was returning to the Kansas City area after going to Cape Girardeau Missouri for the purposes of retrieving a gun belonging to Barnes which was in the custody of the police department. Id. The gun had been seized after Barnes had been wounded in an exchange of gunfire which occurred in January of 2015 at the residence of a friend in Cape Girardeau. (PSR ¶ 13)

_____
2 PSR: Presentence Report in the underlying criminal cause, 1:16 CR 104 SNLJ.

On April 9, 2016, Officers executed a search warrant at the stash house, seizing methamphetamine, drug scales, two handguns, a drug ledger, and drug packaging materials. (PSR ¶ 19)

Gunter was interviewed about the conspiracy and indicated that he had met Barnes in the spring of 2014, and that Barnes had provided him with one half ounce of methamphetamine every two to three weeks for six months, and with two ounce quantities every two to three weeks between October 2014 and July of 2015. (PSR ¶ 22) In July of 2015, Barnes provided Gunter with one pound of methamphetamine, and then two additional pounds, including one pound in March 2016. Id.

On July 29, 2016, Barnes directed Gunter to contact Guzman, who would provide Gunter with methamphetamine. Gunter met with Guzman, who provided him with 169.80 grams of methamphetamine. (PSR ¶ 20)

On September 7, 2016, Barnes and Guzman were arrested in Kansas City Missouri. (PSR ¶ 21) A consent search of Barnes and Guzman's residence resulted in the seizure of a loaded handgun, which Barnes admitted belonged to him, marijuana, drug scales and numerous rounds of ammunition. Id.

Barnes, Gunter and Guzman were indicted and charged with conspiracy to distribute 50 grams or more of methamphetamine. (Doc 1, Cause 1:16 CR 104 SNLJ) Barnes entered an "open" plea of Guilty on May 17, 2017, and the matter was set for a sentencing hearing. (PSR ¶ 1) The presentence report recommended that the offense level was 32 pursuant to Section 2D1.1(c)(4), as the offense involved at least 1.5 kilograms of methamphetamine. (PSR ¶ 30) The report also recommended that two levels be added

3

pursuant to Section 2D1.1(b)(1) (PSR ¶ 31), that two levels be added as Barnes was an organizer leader, manager or supervisor under Section 3B1.1(c) (PSR ¶ 34), and that two levels be added as the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance under Section 2D1.1(b)(12). (PSR ¶ 34) Three levels were deducted for acceptance of responsibility and the total offense level was recommended as being 35. (PSR ¶ 39)

Barnes criminal history consisted of a single one point misdemeanor conviction for possession of drug paraphernalia. (PSR ¶ 43) With a total offense level of 35 and a criminal history category of I, the advisory guidelines range was determined to be 168 to 210 months. (PSR ¶ 75)

Barnes initially objected to the enhancement for the possession of the weapon, and for maintaining the premises for the purposes of distributing a controlled substance. (Doc 112, 1:16 CR 104 SNLJ) Barnes would later withdraw his objection to the enhancement for possession of the weapon and the government would concede Barnes objection to the applicability of the enhancement for maintaining the premises for the purposes of distributing a controlled substance. (Doc 128, 1:16 CR 104 SNLJ)(Tr. Sent. pp. 2-5)

At sentencing Barnes' counsel complained of the fact that Gunter was not assessed an enhancement for being a leader or organizer, while contesting the two level enhancement for Barnes being a leader or Organizer, arguing that Barnes was "as much a middle man as he is a leader or an organizer, and I object to those two points". (Tr. Sent. P.10) This Court rejected that argument, stating:

4

> "Okay. I understand the argument completely. It's very clear that the two-level enhancement is appropriately applied to this defendant, and I don't see how it would be applied to the co-defendant…." (Tr. Sent. P. 20)

The adjusted sentencing guidelines range was determined to be 135-168 months. (Tr. Sent. p. 7) This Court granted a downward variance and sentenced Barnes to 120 Months concurrent as to each count. (Tr. Sent. P. 20)

Barnes appealed, arguing that the sentence imposed was substantively unreasonable, however the Eighth Circuit Court of Appeals affirmed the judgement in an unpublished opinion on March 22, 2018. (Doc 161, 1:16 CR 104 SNLJ)

Barnes 2255 Motion followed.

## II. NEED FOR EVIDENTIARY PROOF

28 U.S.C. § 2255 provides, in pertinent part:

Unless the motion and the files and records of the case conclusively show that the prisoner is not entitled to relief, the court shall . . . grant a prompt hearing thereon. Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Court states:

> The motion, together with all the files, records, transcripts, and correspondence relating to the judgment under attack, shall be examined promptly by the judge to whom it is assigned. If it plainly appears from the face of the motion and any annexed exhibits in the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified.

When a petition is brought under '2255, the petitioner bears the burden of establishing the need for an evidentiary hearing. In determining whether petitioner is entitled to an evidentiary hearing the court must take many of petitioner's factual averments as true, but the court need not give weight to conclusory allegations, self interest and characterizations, discredited inventions, or opprobrious epithets. United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). A hearing is unnecessary when a Section 2255 motion (1) is inadequate on its face, or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and the records of the case. Id. at 225-6. See also United States v. Robinson, 64 F.3d 403 (8th Cir. 1995); Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995).

When all the information necessary for the court to make a decision with regard to claims raised in a 2255 motion is included in the record, there is no need for an evidentiary hearing. Rogers v. United States, 1 F.3d 697, 699 (8th Cir. 1993). An evidentiary hearing is unnecessary where the files and records conclusively show petitioner is not entitled to relief. United States v. Schmitz, 887 F.2d 843, 844 (8th Cir. 1989).

### III. DISCUSSION

**A.** Barnes submits in Ground One that his counsel was ineffective for failing to "investigate, object or challenge" a sentencing enhancement for being a leader or organizer in the offense. Contrary to Barnes contention that his attorney did not contest this enhancement, Barnes attorney did object to the two level enhancement, arguing that

Barnes was "as much a middleman as he is a leader or an organizer, and I do object to those two points." (Tr. Sent. p. 10) This Court, however, rejected that argument, noting that "it's very clear that the two-level enhancement is appropriately applied to this defendant". (Tr. Sent. p. 20)

In order to apply an enhancement under Section 3B1.1(c), the sentencing court must find that 'the defendant was an organizer, leader, manager, or supervisor in any criminal activity. United States v. Frausto, 636 F.3d 992, 996 (8th Cir. 2011) Each of those terms is to be construed broadly, and in making the determination whether the enhancement applies or not, the Court should consider; The defendant's exercise of decision making authority, the nature of their participation in the commission of the offense, their recruitment of accomplices, any right the defendant claimed to a larger share of the fruits of the crime, their degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority the defendant exercised over others involved in the offense. Id.

While merely distributing or selling drugs is insufficient for the enhancement to apply, it is only necessary that the defendant supervise or manage one other participant. United States v. Gamboa, 701 F.3d 265, 267 (8th Cir. 2012) The degree of control need not be extensive. See: United States v. Lopez, 431 F.3d 313, 318 (8th Cir.2005) (Upholding leadership enhancement where the defendant asked his roommate ''to serve as a lookout on one occasion'').

The record clearly reflects that Barnes directed the other members of the conspiracy throughout the commission of the offense, including directing Gunter to

7

provide Guzman with two ounces that Guzman was supposed to deliver to a third individual (PSR ¶ 14), sending Guzman to attempt to retrieve the gun that Barnes had been in possession of during the January 2015 shootout in Cape Girardeau (PSR ¶ 14), and directing Gunter to contact Guzman about obtaining methamphetamine. (PSR ¶ 20).

Barnes did not receive ineffective assistance of counsel in this respect. His attorney did contest the application of the enhancement, however, the record clearly reflects that the enhancement was merited Barnes suffered no prejudice, even assuming his counsel could have contested the enhancement more vociferously. This ground will be dismissed without the necessity of an evidentiary hearing.

B. Barnes alleges in Ground Two that his counsel was also ineffective for failing to "investigate, object or challenge" a sentencing enhancement for the defendant's possession of a weapon during the offense conduct. Barnes' attorney initially objected to the application of the two level enhancement for possession of a weapon during the commission of the offense under Section 2D1.1(b)(1). (Doc 112, 1:16 CR 104 SNLJ) That objection was withdrawn subsequent to Barnes' counsel receiving the government's response which detailed the evidence that it anticipated it could prove at a hearing on that issue. (Docs 121, 128, 1:16 CR 104 SNLJ)

Section 2D1.1(b)(1) of the Guidelines mandates a two-level enhancement if the government proves by a preponderance of the evidence that the defendant possessed a weapon during the commission of a drug offense. United States v. Braggs, 317 F.3d 901, 905 (8th Cir. 2003). In order to apply, the weapon must be present, and it must be probable that the weapon was connected with the drug charge. (Id.) "It is enough if the

8

gun is 'found in the same location where drugs or drug paraphernalia were stored, or where part of the conspiracy took place.'"

(Id., quoting: United States v. Jones, 195 F.3d 379, 384 (8th Cir.1999))

The record reflects that the conspiracy began in the spring of 2014. (PSR ¶ 22) On January 15, 2015, Barnes was wounded in an exchange of gunfire at a residence in Cape Girardeau, Missouri, when an unknown individual attempted to force his way into the residence. (PSR ¶ 54) Although the motivation for the shooting was never positively established, it clearly occurred during the time frame of the conspiracy, and it is a reasonable inference that it was in fact drug related. The firearm which Barnes used in the shooting is in fact the same one which he had sent Guzman to retrieve from the police on February 8, 2016, when she was stopped in possession of $6,180 in drug proceeds. (PSR ¶ 16)

The search of the duplex used by the conspirators resulted in the seizure of two handguns, approximately 82 grams of methamphetamine, three sets of digital scales and a drug ledger.
 (PSR ¶ 19) Finally, when Barnes was arrested on these charges, officers found a loaded handgun, extra loaded magazines, loose ammunition, digital scales and marijuana at Barnes and Guzman's shared residence in Kansas City. (PSR ¶ 21) Barnes admitted that the gun was in fact his. Id

Barnes withdrew his objection to the 2 level enhancement for the possession of the weapon as a result of the information contained in the Government's response to the objection. At the time, the government anticipated presenting evidence at the sentencing

hearing in support of the enhancement that Barnes had provided Gunter with one of the pistols which was located at the stash house, and that Gunter had observed Barnes bring a firearm to numerous drug transactions in which he was involved during the course of the conspiracy. (Doc 121, 1:16 CR 104 SNLJ)

The government was also prepared to present evidence from investigators, that on December 23, 2014, which was during the period of the conspiracy, Barnes, co-conspirator Rosa Guzman and another individual were in a vehicle which was stopped by police in Kansas City Missouri. (Id) A search of the vehicle disclosed approximately 250 grams of marijuana, two loaded Glock pistols and a "Mac 10" style semi-automatic pistol with three loaded high capacity magazines. Id. Barnes admitted ownership of the drugs and the guns. Id.

Ample evidence existed which tied Barnes to the possession of firearms during the course of the conspiracy, and defense counsel was prudent in conceding that the enhancement applied. Based on the record, the enhancement is clearly applicable, and making the government prove the additional facts alleged may have easily resulted in the loss of any benefit that Barnes may have otherwise gotten in sentencing. Barnes was clearly not prejudiced by counsel's decision to not contest this enhancement under the circumstances, and this ground will be dismissed without the necessity of an evidentiary hearing.

**C.** Barnes next complains that his counsel was ineffective in failing to challenge the drug quantity, asserting that:

> "…the Government and the District Court took Stanley's word and uncorroborated conclusory statements at face value without independent proof that Petitioner had supplied him with those drug quantity amounts instead of the other supplier." (Doc 1-1, p. 11)

A sentencing court may consider relevant information about drug quantity without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy. U.S.S.G. § 6A1.3(a), *United States v. Walker*, 688 F.3d 416, 421 (8th Cir. 2012) A sentencing court may even determine drug quantity based on the testimony of a co-conspirator alone. Id. In this instance, although Gunter did not need to testify, his statements about the drug quantity were credible given the fact that he pleaded guilty to the same set of facts, and the independent corroboration of the volume of the multi-ounce drug deals involving the conspirators that the police were able to observe.

Barnes' biggest problem in this regard is the fact that although he did not agree to the offense level as a part of the plea agreement, he did agree to the facts that supported it, and did not ultimately object to the offense level based upon those facts. A fact in a Presentence Report to which the defendant has not specifically objected is a fact admitted by the defendant. *United States v. Abrica–Sanchez*, 808 F.3d 330, 334 (8th Cir. 2015)

During the plea colloquy, the attorney for the government recited the facts of the investigation which included the following:

> "Mr. Gunter told the officers that he had met Mr. Barnes approximately two years earlier at a party and had told someone or someone had told Mr. Barnes Mr. Gunter was interested in making some money. A couple of days later Mr. Barnes approached Mr. Gunter and provided him with a half ounce of methamphetamine. And over the next six months Mr. Gunter

11

> indicated that Mr. Barnes had provided him with a half ounce of methamphetamine every two to three weeks. By October of 2014 or between October 2014 October of 2014 and July of 2015 Gunter indicated that Mr. Barnes had provided him two ounce quantities every two to three weeks. In July of 2015 Mr. Barnes provided him with a pound of methamphetamine and then two more pounds since, including one in March of 2016."

> Tr. Plea, p. 14

After Gunter made those statements, the conspiracy continued, and on August 8, 2016, Barnes sent Gunter six additional ounces of methamphetamine through Ms. Guzman, who had concealed it in a cat food box. (Tr. Plea. p. 15) Although Barnes balked somewhat at the amounts, ultimately he agreed that he had committed all of those acts. (Tr. Plea. pp. 16-17)

Under these circumstances, where Gunter's assertions, which are credible given the corroborating circumstances very clearly support a drug finding of more than 1.5 kilograms, and Barnes, albeit reluctant, admission that he committed the acts in question, there is no merit in Barnes contention that his attorney was ineffective by failing to contest the drug quantity. In fact, the decision not to contest something that the government could readily establish was sound, as Barnes more likely stood to lose ground by way of lost acceptance of responsibility for frivolously contesting the relevant conduct, than he stood to gain by arguing against it.

This Ground will be dismissed without the necessity of an evidentiary hearing.

D.    Finally, Barnes complains that his attorney was ineffective for failing to challenge the sufficiency of the evidence that he was guilty of conspiracy in this case. Barnes

contends that his conviction for conspiracy is invalid because the evidence did not have the essential elements for a conviction and only proved a buyer-seller relationship between himself and Gunter. (Doc 1-1, pp. 12-13) This contention is totally without support.

To prove Barnes conspired to distribute methamphetamine under Title 21 U.S.C. Section 846, the government need only prove: (1) that there was a conspiracy, i.e., an agreement to distribute Methamphetamine; (2) that Barnes knew of the conspiracy; and (3) that Barnes intentionally joined the conspiracy. A tacit understanding will suffice; a formal agreement is unnecessary. United States v. Jones, 101 F.3d 1263, 1267 (8th Cir. 1996)

The record clearly reflects that Barnes, Gunter, Guzman and others conspired to distribute methamphetamine. Barnes, Gunter and Rosa Guzman met at a drug "stash house" in Jackson Missouri. (PSR ¶ 13) Barnes directed Gunter to provide Guzman with two ounces of methamphetamine, which Guzman was to deliver to an unidentified female subject. (PSR ¶ 14) Gunter told Barnes that he would send money back with Guzman as well. Id. Guzman was stopped by police in St. Charles County Missouri, after a trip to Cape Girardeau to attempt to retrieve Barnes' gun which he used in the shooting. (PSR ¶ 16) Barnes directed Gunter to contact Guzman, who would provide Gunter with methamphetamine. Gunter met with Guzman, who provided him with 169.80 grams of methamphetamine. (PSR ¶ 20) These events clearly demonstrate that Barnes, Guzman and Gunter were in fact working together to distribute methamphetamine to others.

During the plea colloquy, Barnes admitted each and every element of the conspiracy charge.

> Court: "I'm going to go through the elements with you specifically then too. That's set out on Page 2, Paragraph 3. [of the written plea stipulation] Do you admit that you and two or more other persons reached an agreement or came to an understanding to distribute methamphetamine, that you voluntarily and intentionally joined in that agreement or understanding, that's the conspiracy, in other words, and at the time that you knew the purpose of the agreement was to distribute methamphetamine: Do you admit all that too?"
>
> Barnes: "Yes".
>
> (Tr. Plea. p. 17)

The record clearly reflects that Barnes admitted each and every element of the conspiracy charge, and that he did so because he was in fact guilty of conspiracy. The record further reflects an ample factual basis from which this Court found that Barnes and others were working in concert to distribute methamphetamine. This ground will be dismissed without the necessity of having an evidentiary hearing herein.

## CONCLUSION

For the foregoing reasons, this Court denies Biggs' § 2255 petition, without a hearing.

**IT IS FURTHER ORDERED** this Court will not issue a certificate of appealability because Barnes has not made a substantial showing of the denial of a federal constitutional right.

Dated this 31st day of July, 2019.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE